Good morning. May it please the Court. My name is Henry Rosbacher. I'm here with Mr. Cahill from my firm and Mr. Roddy from the Wilentz firm. We represent Mr. Vitt and we represent the class. In this case, we allege that Apple conceived and executed a concerted advertising plan for Apple to target with the iBook 4 a particular segment of the computer market. Students who needed a tough, rugged, portable computer that they could take with them to class, that they could put in their backpacks, that they could drop on the ground. And that's what they advertised. They advertised it both on their website, which we've referenced in the complaint. They advertised it in written materials. They advertised it in press releases. They're set out in the reply brief and the Second Amendment complaint. And in essence, what Apple said was that it was making a Land Rover for people who use computers. And what it delivered was a defective Ford station wagon. Well, let me ask you this, because this is the argument they make, the opposing counsel. They say the words that you're describing is like the, what did you say, the Land Rover? I mean, it goes to hardiness. And your argument has nothing to do with whether you drop it. I mean, the logic board failure, as I understand it, is just when you turn the computer on and off. It has nothing to do with the sort of durability issues. That's the argument they're making. Why isn't that correct? Because, Your Honor, our expert report and, in addition, the Danish report say that these things are fragile. And it turns out that when the Danes, Danes only looked at one defect. They looked at whether or not if you turned it on or off it degraded and, in fact, did not work. But the fact of the matter is there are 4,500 complaints now online about these things not working and being defective. And the key point is they're fragile. And that's a factual issue. Excuse me. Is it related to hardiness? In other words, dropping it or running it over with your bicycle or whatever the case is? Yes. They're both interrelated. How is that? How is the logic board failure that was described related to durability? Because, Your Honor, the cures that are talked about online and the cures that are talked about in the Danish report is that if you shim it or you clamp it so that it can't move if it's hit, that solves the problem temporarily. It does not solve it permanently. And the questions you're asking, Your Honor, are really good questions. They're factual questions that can't be answered from the face of the complaint. But were you given a guarantee for a time? I beg your pardon? You were given a guarantee for a period of time? That's correct. And you expected it to run on forever? No. We expected them not to lie to us about its characteristics when they sold it to us. We think this case is governed by the Gerber case, where they made representations, they weren't true. That's what we allege. We've got experts who say that it isn't hardy, it isn't defect-free. California Supreme Court is clear that these are factual issues. So let's assume that we agreed with the opposing counsel that these were not misrepresentations, they went to durability, so they're not misrepresentations of the sort that we thought there was in Williams. Does that mean you lose? No, Your Honor. We think that if you go past that, that where you have this design defect, that in fact we are entitled to go forward. The warranty cannot be used on a defective product in California under Robinson Helicopter to exculpate the company from fraudulent conduct and from misconduct. They made representations that this was fit. It clearly isn't fit. There are complaints all over the place that in fact these things fail during the warranty, after the warranty, that this is in fact a defective computer. But when you say they made representations that things are fit, are you talking about implied representations or expressed representations? We think both, Your Honor. Once you sell this item, whether you say it's just, and the representations aren't really only hardiness, but that is part of it, and you deliver a product that in fact has to be clamped to work temporarily, you have not met your obligations to your customers. When you pile on top of that the representations that it was in fact fit for mobile use, it was in fact hardy, and you now find that they are failing because the connections are fragile, we think, Your Honor, we have a right to go to discovery and go to the facts, just as in the Gerber case, the court here felt that you had a right to go to the facts. So in this case, Hewlett-Packard v. Superior Court, they defined Dardy as holding that there can't be a claim for breach of express warranty or UCL violations after, or it bars claims after the warranty period. That that's how they interpret Dardy. That in fact they do interpret Dardy as immunizing, saying if a piece of equipment fails outside of the warranty period, then there's no expectation by the public that it would last any longer than that. What do we do about those cases? We think Teachworth and Flock have it right, Your Honor. Well, those are not California cases, right? Those are district court cases. They are district court cases. So we're bound by what the California court says, we're bound by what the district court says. What you have is a complete split here in all of the authorities. Some of them misinterpret Dardy and misinterpret Barton. Dardy was not a safety issue case. This isn't a safety issue case either, right? That's correct. And you don't have to allege safety. The fact of the matter is that this product was defective. According to the Danes, the day it was sold, an inherent design defect. Let me just ask you about Dardy and California law. Because Dardy seems a little wacky to me. I mean, when I go and buy a computer, I don't think it's going to break in six months or a year. But on the other hand, the California case, I didn't see a case that said that Dardy was wrong. These district court cases obviously aren't binding on us. What's your best California case post-Dardy that says, no, it isn't? No, it isn't a safety. May I just confer for a moment, Your Honor? Your Honor, we don't have one that explicitly meets that. That's one of the problems here. All the litigation, for reasons that escape me, are taking place in federal court. And you are, you know, in fact, there is a case up in front of the Ninth Circuit right now where the plaintiffs have requested that, in fact, these issues be referred to the California Supreme Court. That's the Ford case that was argued a month ago. But right now, this battle is being fought out in front of federal judges and not in front of the state courts because of, I think, Kappa has brought us over here. Just to clarify, did you say that a panel of this court has certified a question that's directly on point to the California Supreme Court? No, they have been requested to certify questions in relation to these. They haven't done that yet? They have not. Your Honor, I would like to reserve the remainder of my time, if I may. May it please the Court. My name is Gregory Stone, and together with Rose Ring, we represent Apple Inc. And the case, Your Honor, in which the plaintiff requested certification was Smith v. Ford, which was argued last week. The panel did not make any indication at that time as to how they would rule on that request. And that's the same issue as in this case? No, but it raises similar issues of the application of Barden and Doherty were the issues that I think are raised there. Thank you. I think we can all begin in agreement on the proposition that there is no product that lasts forever. And similarly, that when a product line of products is introduced, some will fail sooner and some will fail later in the natural course of things. The issue here is not whether a product can or should be defect-free and never fail. The issue is when a product does fail, who bears responsibility for the economic damage or the economic cost that results from that failure? And in this instance, we have a long line of cases dating back to the California Supreme Court's decision in Seeley v. White Motors in 1965, where Chief Justice Treanor laid out the way in which California law of sales and warranty would divide that responsibility for the economic loss that is suffered when a product no longer works as you would hope it would. And in that case then, and later in Barden and Doherty, the courts have made clear that in California, the responsibility lies with the manufacturer, and Apple accepted responsibility here for the period of time of its warranty, which is one year, and it's a warranty to repair or replace. It's not a guarantee the product won't break. In fact, the reason you say we will repair it or replace it is you recognize that some number of those products will break. And the responsibility then for fixing them or replacing them lies with Apple. And then after that, I'm sorry. So after that period of time, the consumer then, of course, has a choice. They accept the responsibility, which the law would otherwise place on them after that year, or they can purchase an extended warranty, which again comes with a cost because there is a risk that the product will fail after that year period. And the consumer has the choice, if you will, to insure against that risk. So California law has been clear since 1965, and Barden and Doherty reinforce that rule that the responsibility for the economic loss that may occur when a product stops working is divided between the manufacturer and the consumer in accordance with the law of warranty and the law of sales. Now, there are exceptions. And the plaintiff here, the appellant here, tries to fit within one of those exceptions, not the safety exception, but the exception for a claim that there was affirmative representations that were made by Apple that somehow turned out to be false and inconsistent with the way in which the product ultimately performed. That seemed to be the focus of appellant's argument just now, so maybe I should turn to that, but I don't want to turn to that without emphasizing that the long line of cases from Seeley through Barden and Doherty really address quite clearly that what we're talking about here is how to ultimately allocate an economic burden that may fall on people when a product quits working or breaks. And that is a well-established doctrine of law in California and has not been questioned by any California court. Your Honor, you asked Judge Ikuti, you asked sort of about the Doherty line of cases. In Doherty, review by the Supreme Court, the California Supreme Court was sought. Review was not granted there. There's been no inconsistent California cases there. The Falk case that is relied on by the appellant here is one that has not been adopted by the California courts. In fact, the reasoning of Falk was rejected by the California Court of Appeal in Bueller. So I think that line of cases is one that is not consistent with what the California courts have told us is California law. How about the tobacco cases? They're not exactly on point, but they do address some of the same issues. The tobacco cases talk about, I think, in rate tobacco too, talks about the general standard for deception. It doesn't talk about what happens if a product fails to continue to perform. And that's really the issue of warranty and the law of sales. The tobacco cases involve issues that involve questions, at least as alleged by the plaintiffs, of safety or health. So in that sense, they involve a very different set of issues and they involve sort of a general question about deceptive behavior. But they don't involve a question about how long a product should last or who should bear the economic responsibility when a product finally quits working, as we know will happen with every product that any of us can purchase today. So I think it's a very distinct set of facts and nothing in the in-rate tobacco too case suggests that Seeley was wrongly decided or that the court was questioning its reasoning or suggests or even mentions the decisions in Barden and Doherty. So I think there's nothing inconsistent between those two lines of cases. I think it's very different when you talk about an expectation about how long a product will continue to perform as opposed to a question about whether representations about the health attributes or health impact of a product, whether those statements turn out to be true or not. A distinct set of cases in that regard. But I do want to talk about the claim here that there are affirmative misrepresentations in the advertising because that does seem to be the focus. And I think there's really three distinct reasons why appellant's argument in that regard should be rejected by this court. First and foremost, statements in order to be actionable need to be objectively verifiable. There needs to be some benchmark against what you can measure whether the product performs up to the standard. A long line of cases often refers to sort of subjective statements as puffery. And that's not a word I really adopt because it doesn't seem to quite convey the right sense of the principle here. The principle is, and this court in Southland-Sod, which I know Judge Noonan was one of your cases, it very clearly said, if you make a statement like 50% less mowing or if you make a statement like this vehicle can climb a 45-degree slope, if you make objectively verifiable statements, those are ones that may be actionable. But statements where you make use of words like reliable and durable and best buy on the market and a great trade-off between price and performance, those are not objectively verifiable, measurable, benchmarkable statements and thus are not actionable. And many courts would refer to those as puffery. So the first reason and the clearest reason why the statements to which appellants point don't give rise to a claim is that they're not objectively verifiable. Why is the durable or durability objectively verifiable compared to other products like the old Timex? They would test it by putting a bunch of watches in water and see if it really does keep on ticking. Well, there's two differences there. And that's a great example. Would it be durable if it lasted 18 months or two years or three years? What does durable mean? It's really in the eyes of the beholder, which is why the law says resort to the period of time that the warranty is in effect. Secondly, with respect to the Timex not leaking underwater, there you had, as this court confronted in Southland Sod, a test that was advertised. We performed this test. We conduct this test under these circumstances and it passes or it doesn't. A readily verifiable test where you could replicate the test and see if the results came out the same. But nobody in saying a product is durable says that it will last forever. Nobody understands durable to mean some products won't fail for one reason or another. It's not a promise of a defect-free product. And the appellant's argument here really is products should last forever and not have any problems that cause them to break or quit working. And that's not the promise any manufacturer makes and it's not an interpretation I think we should give to the word durable. But isn't there a reasonable expectation by a consumer that a product will have a useful life? So if I buy a washing machine and I have a year warranty, I don't expect it to break after a year and I think that's a reasonable expectation. And if you know something that's going to, the manufacturer knows that it's going to break on day 366, that seems like material information that failure to tell is deceptive. But we don't have that situation here. We clearly don't have the situation of products designed to break on year 366. That is not the facts of this case. And indeed when you think about it, and think about it in the context of Apple and all of its products, it is today the world's most successful consumer electronics company. Its products have a fabulous reputation in the market and people come back to buy them again and again because of their experience with them, because of what they've learned from their friends, their neighbors, their colleagues, on the blogs, in the consumer reviews and so on. So if you designed a product to do that, to break one day after the warranty expired, that product wouldn't keep selling and that company wouldn't be in business. So there's a difference between what we all expect and hope our products will do and where the law puts the responsibility for paying for the fixing or repairing of the product in the event it does break. And that's why when you purchase your washing machine, you know that for a year the manufacturer will send a repairman out free of charge to fix it and after that year you have the choice of we pay the repairman or we buy the extended warranty so that the manufacturer continues to bear that responsibility. And consumer electronic products are no different. They have fewer moving parts in some sense and a lot more electronic parts but they still will break from time to time. And so the second point about why you should not find it to be actionable here is that the statement about durable or reliable or on-the-go or mobile is not a statement that is a promise of a defect-free product. And finally, and Your Honor questioned Appellant's Counsel a bit about this, the statement is not in any way related to the claim defect. The claim defect here has to do with a soldering issue and I should note the Danish board has withdrawn its report, an issue that occurred after the briefing had been complete in the district court. But whether it had or it hadn't, the issue here is one that is very different. The durability, when you look at the ads in context, the question here of durability is will it survive being dropped, being jostled in and out of backpacks, falling, being squished between books and all of those things. Will it have the physical strength to withstand it? And that's why you'll see in the ads it's explained that magnesium is used. That's why you'll see that special shock absorbers are used and there's an active motion sensor that is intended to detect when the laptop, when the iBook is being dropped and lift the heads off of the hard drives so that they won't do any damage to the hard drive. So in the context of the ads and the articles that Appellant points to, we see a context which very clearly describes what Apple meant when they said this one was designed to be durable and reliable for students who were on the go. It was a stronger and a physical sense in terms of the strength of materials and the design to protect the product from being damaged. And so that, as for example, the sudden motion sensor. And those ads were ones that are in the record at excerpts of record at 321 through 335. Those are ones that Apple put before the district court so that it could consider the statements made in context. And I think those statements make clear that they're very different from the modality of failure that the Appellant claims about here, which has to do with electrical connections, whereas described both in the complaint and in their attachments, it depends on the temperature fluctuations or the on and off, the heating and cooling due to turning it on and off and making the electrical connections with current flowing and then turning them off so they cool. That's a very, very different sort of modality of failure as they describe it and allege it than what is described in the advertisements with respect to the ultimate strength of the product. So to sum up, and I'm happy to answer any other questions the panel has, Seeley and Barden and Doherty make clear there's no obligation to disclose here and they make clear how the economic consequences of a product breaking are allocated between manufacturer and consumer. And with respect to the representations, this court in Southland saw it in other decisions and the numerous California courts to have considered it said if statements are not objectively verifiable, measurable, benchmarkable, those statements are not actionable and don't give rise to a claim. For those two reasons, we respectfully request that this court affirm the decision of the court below. Thank you. Your Honor, Seeley is a red herring here. Seeley is a case which posits that both sides have complete and accurate information as to the product. And yes, that's right, Justice Treanor, as he did with so much law, invented it and it's been the law forever. But Robinson Helicopter, California Supreme Court, makes absolutely clear that Seeley does not apply in any kind of a situation where there is misrepresentation or failure to disclose in commercial dealings. The law in this state, in our state, California, is Lemandry. And Lemandry is very clear that you can sue regardless of the warranty. If, in fact, the vendor has made partial representations, which are false, we believe that these representations under the test of the UCL are likely to deceive. You meet that standard. But also, we allege that they had exclusive knowledge. And what is interesting is the Danish report, page 34 of our complaint, I'm sorry, page 55 of our complaint, states that, in fact, the same defense, the same failures, were in the G3. And we allege that in the complaint. The G3 was the predecessor model. It failed in exactly the same way. And we allege that Apple knew this, that they brought out a spritzed up, misrepresented new product. In addition, our expert, who has gone and looked at the G3 and the G4, at page 34 of our complaint, says that the solder design and the solder execution produced a fragile situation that was likely to break. You mention LeMandry v. Judkin in your briefing, where we focus on these Judkin factors. And that case didn't have to do with a manufacturer. It was, I think, a lawyer and creditor or what the creditor owed to the lawyer. So, I had some I was struggling with. How do we apply as between the Judkin case and the Dougherty case, which seemed to be more closely on point. How do we read those two together? Well, I think Dougherty does not concern misrepresentations. LeMandry explicitly does, as does Robinson Helicopter and LeMandry all deal with the situation where you've made misrepresentations, you've made failures to disclose what you know. Here, we believe we have more than enough, given the fact the Danish report found the same failures as the G3, our expert found. You have to say that there was an affirmative misrepresentation by Apple. Is that right? This is a question we discussed a little earlier. I think there was a misrepresentation that this was it can't be fragile and be durable. How do you address the argument that durability is not objectively testable? They didn't suggest any test method. It falls into the puffery category. How do you address that? I think you can look, number one, at the number of complaints. There's now a petition on file which we cited at 2,700 complaints for exactly this failing when we filed the suit. They're now 4,500. You can look at the failure rates that Apple has, which they will not give us access to because Judge Wu, decided all these factual issues and it's called the Sixth Motion. How does that go to the objective testability of the claim that it's durable? So they're saying durable, you can't measure what does durable mean? It means one thing to one person. It isn't like it will last for X period of time or it will withstand blows of this type. That's their argument as to why that's not this representation. If you look, Your Honor, and you drive the Land Rover over the bumps and the axle breaks, you know it isn't durable. And if you find that 10% or 5% or 12% of the axles break on a Land Rover, it isn't durable. It's not what they told you it would do. It's not designed as they claimed it was. Here we have the same situation. They went out of their way to make affirmative representation tests for a particular use. There are thousands literally of complaints of failure. The failure has been traced to the fragility and the inadequate inherent design defect in the solder. And solder breaks in two ways. It gets hot and cold, as the Danes said, but it also breaks because it's hit. And you know that because the Danish report itself shows that if you jam it together, it'll work for a while. So it's not the chemical composition of the solder. It is if you jam it together and you keep it so that it doesn't move, it will work. So that's a remedy, but that doesn't explain why, right? But it shows the nature of the defect. In other words, by not building this robust enough to not move in one way, they did not create what my learned brother claims they did. They did not create a durable Land Rover of a computer that you could sell to these people. And we think that we have a right to get discovery. And especially since they had to, in fact, extend the warranty on the G3 for exactly the same defects, which were found to be the same defects by the Danish report. And Buehler, your honor, we don't think that that relates here. There the court found there were no expectations. But again, Seeley is not applicable. Robinson Helicopter and LeMandry are applicable. And if you look at it economically, going back to my Wharton days, you cannot align the old risk. You can't assign the risk. You can't move the risk if the parties don't have information so that they can evaluate it. Thank you. All right. The case of Vith versus Apple Computer is submitted. And we'll next hear the case of Turankian versus the Republic of Iraq.
judges: Noonan, Gould, Ikuta